Matthew W. Park
Nevada Bar No. 12062
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996
Tel: 702.949.8200
E-mail: mpark@lrrc.com

*Attorneys for Defendant*
*OCTAPHARMA PLASMA, INC.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| BERNARD CHABOUDY, an individual, | CASE NO. |
| Plaintiff, | (Clark County District Court Case No. A-16-741675-C) |
| v. | |
| OCTAPHARMA PLASMA, INC., a Foreign Corporation, DOES I through X, inclusive, and ROE ENTITIES, I through X, inclusive, | **DEFENDANT OCTAPHARMA PLASMA, INC.'S PETITION FOR REMOVAL** |
| Defendant. | |

TO:     THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA:

The removing Defendant Octapharma Plasma, Inc. ("Octapharma" or "Defendant"), respectfully states that it is removing the above-entitled action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446 based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). In support of this Petition for Removal, Octapharma states as follows:

**I.     THE STATE COURT ACTION**

1.     The above-entitled action was commenced on or about August 12, 2016, in the Eighth Judicial District of Nevada and is now pending in that court under the designation *Bernard Chaboudy v. Octapharma Plasma, Inc.*, Case No. A-16-741675-C in Department XXI (hereafter the "State Court Action").

2.     On August 23, 2016, Octapharma was served with Plaintiff's Summons and Complaint for the State Court Action.

2010830859_1

3.      Copies of pleadings served on Octapharma and all other defendants filed in the State Court Action are attached hereto as **Exhibit A**. *See* 28 U.S.C. § 1446(a).

4.      As set forth more fully below, this case is properly removed to the United States District Court for the District of Nevada because there is complete diversity of citizenship between Plaintiff, Bernard Chaboudy, and Octapharma, the amount in controversy exceeds $75,000, exclusive of interest and costs, and this Notice of Removal is timely. 28 U.S.C. §§ 1332(a), 1441 and 1446.

## II.     Removal is Proper Because This Court Has Diversity Jurisdiction Pursuant to §§ 1332 and 1441

5.      Diversity jurisdiction under 28 U.S.C. § 1332 exists because the amount in controversy exceeds $75,000 and this action is between citizens of different states.

6.      Octapharma is a Delaware corporation that operates plasma donation centers, with its headquarters in North Carolina. It operates a plasma donation center in Las Vegas, Nevada. (Comp. at ¶ 2).

7.      Plaintiff is a resident of Clark County, Nevada. (Comp. at ¶ 1).

8.      Defendants sued as Does and Roes I-X are fictitious parties and are not relevant to the determination of jurisdiction. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

9.      Complete diversity exists here because Plaintiff and Defendant are citizens of different states. (Comp. ¶¶ 1, 2); 28 U.S.C. § 1332.

10.     The only named Defendant in the Complaint is Octapharma. Accordingly, all named defendants consent to this removal.

11.     No previous application for removal has been made.

## III.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

12.     Plaintiff alleges that he was injured by Octapharma via an improper plasma donation process, after a withdrawal of blood via a phlebotomy at Defendant's plasma donation center. (Comp. ¶¶ 4-8). His injury allegation includes suffering a disabling and debilitating stroke. (*See id.*)

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

13.     If it is "facially apparent from the complaint that the plaintiff seeks damages sufficient to create federal jurisdiction, then the case should be remanded 'only if it appears to a legal certainty that the claim is actually for less than the jurisdictional minimum.'" *Davis v. Advanced Care Techs., Inc.*, 2007 U.S. Dist. LEXIS 32348 at *3 (E.D. Cal. 2007); *see also Campbell v. Bridgestone/Firestone, Inc.,* 2006 U.S. Dist. LEXIS 16113 at *7 (E.D. Cal. 2006) (amount in controversy requirement was satisfied where plaintiff sought unspecified amount of compensatory damages for wage loss, hospital and medical expenses, general damages, and loss of earning capacity.)

14.     The Complaint asks for damages <u>in excess</u> of $10,000 (Comp. ¶¶ 8, 9, 12 19, 20), which is the minimum damages pleading requirement under the Nevada Rules of Civil Procedure. The Complaint does not otherwise allege a specific amount in controversy. However, allegations in the Complaint place more than $75,000 in controversy. Plaintiff's suit seeks general damages for past and future physical pain and suffering, past and future mental pain and suffering, past and future disability, past and future loss of enjoyment of life, hedonic damages, medical costs, and attorney's fees and costs from Octapharma. (Comp. Prayer for relief ¶ 1-7).

15.     Furthermore, Plaintiff's injury allegation includes suffering a disabling and debilitating stroke. (Comp. ¶¶ 4-8). *See e.g., In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 870 F. Supp. 2d 587, 596 (S.D. Ill. 2012) (finding the $75,000 amount in controversy met based on the allegations in the pleadings, where plaintiff suffered pulmonary embolisms and alleged severe and permanent injuries, including emotional distress, physical pain, diminished enjoyment of life and punitive damages); *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011) (plaintiff alleged thromboembolic injury, court finding $75,000 amount in controversy met based on the allegations of severe and permanent mental and physical injuries in the pleadings).

16.     Importantly, Plaintiff alleges <u>permanent</u> mental and physical injuries, among other things. (Comp. ¶ 8). While Octapharma denies any liability to Plaintiff, permanent mental and physical injuries preceded by a stroke substantially exceeds the $75,000 threshold, demonstrating that this case meets the jurisdictional amount required for removal.

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

17.     Plaintiff has provided Octapharma with 1411 pages of medical records.

18.     Furthermore, the amount in controversy may include the possible award of attorney's fees, which, if this case goes to trial, would exceed $75,000. Plaintiff also seeks punitive damages.  (Comp. Prayer for relief ¶ 1-7). *See Corral v. Homeeq Servicing Corp.*, No. 2:10-cv-00465-GMN-RJJ, 2010 WL 3927660, at *3 (D. Nev. Oct. 6, 2010) ("the amount in controversy may include the compensatory and punitive damages" and "attorney's fees").

19.     Simply put, while contested by Octapharma, the alleged monetary damages and likely attorneys' fees, taken separately, meet the jurisdictional amount. Together, the amount in controversy certainly exceeds $75,000.

**IV.    THIS COURT HAS ORIGINAL JURISDICTION AND REMOVAL IS TIMELY**

20.     This action may be properly removed to this Court under 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332.

21.      The District Court of Clark County, Nevada is located within the United States District Court for the District of Nevada. *See* 28 U.S.C. § 84(c)(2). Venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

22.     A true and correct copy of this Notice of Removal will be provided to Plaintiff and will be concurrently filed with the Clerk of the Eighth Judicial District Court of the State of Nevada.

23.     This Notice of Removal is timely and proper under 28 U.S.C. § 1446(b) because it is being filed within 30 days from the point when Defendant had notice that the action was removable, and within one year from when Plaintiff commenced his State Court Action.

24.     Defendant reserves the right to amend or supplement this Notice of Removal.

/ / /

/ / /

/ / /

/ / /

3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

WHEREFORE, Octapharma respectfully removes this action from the District Court of Clark County, Nevada to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

DATED this 14th day of September, 2016.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: _____/s/ Matthew W. Park_____
Matthew W. Park (SBN 12062)
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169-5996

Attorneys for Defendant *OCTAPHARMA PLASMA, INC.*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that I caused the **Notice of Removal** to be filed and served electronically via the CM/ECF electronic service system to the following counsel of record:

Steven M. Burris, Esq.
LAW OFFICES OF STEVEN M. BURRIS
2810 W. Charleston Blvd., Suite F-58
Las Vegas, NV  89102
sb@steveburrislaw.com

DATED this 14th day of September, 2016.

_____/s/ *Annette Jaramillo*_____
An Employee of Lewis Roca Rothgerber Christie LLP

3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169-5996

Lewis Roca
ROTHGERBER CHRISTIE

# EXHIBIT A

# EXHIBIT A

8/23 2:51

NV

1  **SUMM**
   **STEVEN M. BURRIS, ESQ.**
2  Nevada Bar No. 000603
   sb@steveburrislaw.com
3  **LAW OFFICES OF STEVEN M. BURRIS**
   2810 W. Charleston Boulevard, Suite F-58
4  Las Vegas, Nevada 89102
   (702) 258-6238 - Telephone
5  (702) 258-8280 - Facsimile

6  *Attorneys for Plaintiff*

7                          **DISTRICT COURT**

8                    **CLARK COUNTY, NEVADA**

9  BERNARD CHABOUDY, an individual,      CASE NO.:  A-16-741675-C
                                         DEPT. NO.: XXI
10              Plaintiff,

11  vs.

12  OCTAPHARMA PLASMA, INC., a Foreign
    Corporation; DOES I through X, inclusive,
13  and ROE ENTITIES I through X, inclusive,

14              Defendants.

15

16                      **SUMMONS - CIVIL**

17  **NOTICE!  YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU
    WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ**
18  **THE INFORMATION BELOW.**

19  **TO THE DEFENDANT(S):**  A civil Complaint has been filed by the Plaintiff(s) against you for

20  the relief as set forth in the Complaint.

21                    **OCTAPHARMA PLASMA, INC.**

22      1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on

23          you, exclusive of the day of service, you must do the following:

24          (a)       File with the Clerk of this Court, whose address is shown below, a formal

25                    written response to the Complaint in accordance with the rules of the Court,

26                    with the appropriate filing fee.

27          (b)       Serve a copy of your response upon the attorney whose name and address is

28                    shown below.

*Law Offices Of*
**STEVEN M. BURRIS**
*A Limited Liability Corporation*
2810 W. Charleston Boulevard
Suite F-58
Las Vegas, Nevada 89102

                              Page 1

2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by;

STEVEN M. BURRIS, ESQ.
Nevada Bar No. 000603
sb@steveburrislaw.com
LAW OFFICES OF STEVEN M. BURRIS
2810 W. Charleston Boulevard, Suite F-58
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF THE COURT

By: JOSEFINA SAN JUAN

DEPUTY CLERK                          Date
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada 89155

DISTRICT COURT SEAL    AUG 1 7 2016

**NOTE: When service is by publication, add a brief statement of the object of the action. See Rules of Civil Procedure, Rule 4(b)**

### AFFIDAVIT OF SERVICE

**STATE OF NEVADA** )
                     ) ss.
**COUNTY OF CLARK** )

       _____, being duly sworn says:  That at all times herein affiant was and is a citizen of the United States, over 18 years of age, not a party to or interested in the proceeding in which this affidavit is made.  That affiant received \_\_\_\_ copy(ies) of the Summons, Complaint and Initial Appearance Fee Disclosure (NRS Chapter 19), on the \_\_\_\_ day of _____, 20\_\_, and served the same on the _____ day of _____, 20\_\_\_, by:

**(affiant must complete the appropriate paragraph)**

1.    delivering and leaving a copy with the Defendant _____ at <u>(state address)</u> _____ _____.

2.    serving the Defendant _____ by personally delivering and leaving a copy with _____, a person of suitable age and discretion residing at the Defendant's usual place of abode located at:<u>(state address)</u> _____ _____.

**(Use paragraph 3 for service upon agent, completing A or B)**

3.    serving the Defendant _____ by personally delivering and leaving a copy at <u>(state address)</u> _____.

      a.    with _____ as _____, an agent lawfully designated by statute to accept service of process:

      b.    with _____, pursuant to NRS 14.020 as a person of suitable age and discretion at the above address, which address is the address of the resident shown on the current certificate of designation filed with the Secretary of State.

4.    personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope postage prepaid (check appropriate method):

      \_\_\_\_ ordinary mail

1

_____ certified mail, return receipt requested
_____ registered mail, return receipt requested

2

addressed to the Defendant _____ at the Defendant's last known address
which is (state address) _____.

3

I declare under penalty of perjury of the law of the State of Nevada that the foregoing is

4

true and correct.

5

EXECUTED this _____ day of _____, 20__.

6

7

_____
Signature of person making service

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Electronically Filed
08/12/2016 04:46:22 PM

**CLERK OF THE COURT**

1  **COMP**
   **STEVEN M. BURRIS, ESQ.**
2  Nevada Bar No. 000603
   sb@steveburrislaw.com
3  **LAW OFFICES OF STEVEN M. BURRIS**
   2810 W. Charleston Boulevard, Suite F-58
4  Las Vegas, Nevada 89102
   (702) 258-6238 - Telephone
5  (702) 258-8280 - Facsimile
   *Attorneys for Plaintiff*
6

7                    **DISTRICT COURT**

8                **CLARK COUNTY, NEVADA**

9  BERNARD CHABOUDY, an individual,      CASE NO.: A-16-741675-C
                                          DEPT. NO.: XXI
10            Plaintiff,

11 vs.

12 OCTAPHARMA PLASMA, INC., a Foreign
   Corporation; DOES I through X, inclusive,
13 and ROE ENTITIES I through X, inclusive,

14            Defendants.

15

16                      **COMPLAINT**

17       Plaintiff, BERNARD CHABOUDY, an individual, by and through his attorney of record,

18 STEVEN M. BURRIS, ESQ. of the LAW OFFICES OF STEVEN M. BURRIS, and for his causes

19 of action against Defendants, and each of them, complains and alleges as follows:

20                          **I.**

21                **GENERAL ALLEGATIONS**

22       1.    At all times relevant herein, Plaintiff BERNARD CHABOUDY is and was a resident

23 of Clark County, Nevada.

24       2.    At all times relevant herein, Defendant OCTAPHARMA PLASMA, INC.

25 ("OCTAPHARMA"), is and was a foreign corporation licensed and authorized to do business in the

26 City of Las Vegas, Nevada as a clinic or laboratory.

27       3.    That the true names or capacities of those individuals, corporations, associates,

28 business entities or otherwise, of the Defendants named herein as DOES I through X and ROE

*Law Offices Of*
**STEVEN M. BURRIS**
*A Limited Liability Corporation*
2810 W. Charleston Boulevard
Suite F-58
Las Vegas, Nevada 89102

1  ENTITIES I through X, inclusive, are presently unknown to Plaintiff, who therefore sues said

2  Defendants by such fictitious names. Plaintiff is informed and believes and therefore alleges that each

3  of the Defendants designated herein as DOE Defendants or ROE ENTITIES are the employees, agents,

4  owners, operators, managers, employers, business entities or otherwise of OCTAPHARMA, and

5  therefore legally responsible in some manner for the events and happenings referred to and caused

6  damages proximately to Plaintiff as herein alleged, and Plaintiff will ask leave of the Court to amend

7  the Complaint to insert the true names and capacities of DOE Defendants or ROE ENTITIES I through

8  X, inclusive, when the same have been ascertained, and to join such Defendants in the action.

9  **II.**

10  **FIRST CAUSE OF ACTION**
   **(Negligence/Malicious and Oppressive Conduct)**

11

12  4.      OCTAPHARMA pays individuals to donate plasma which OCTAPHARMA then sells

13  for a profit. OCTAPHARMA collects plasma at centers located in Clark County, Nevada. Donors

14  are allowed to donate plasma up to two times per week in exchange for a payment. Financial

15  incentives are offered to individuals who donate plasma twice per week. When a donor gives plasma,

16  a large volume of blood is taken from the donor's circulatory system. Once the blood has been

17  withdrawn from the donor, fluids must be given to the donor to replace the large volume of fluid that

18  was withdrawn from the donor. Typically, after the plasma withdrawal, the donor's fluids are replaced

19  through an intravenously ("IV") administered saline solution. If the fluid replacement is not

20  administered to the donor, the donor's blood will, in effect, "thicken", which increases the risks of

21  stroke.

22  5.      On or about August 15, 2015 Plaintiff gave plasma to OCTAPHARMA in exchange

23  for compensation. After the plasma was withdrawn from Plaintiff's system, OCTAPHARMA

24  negligently and recklessly failed to administer any saline solution to Plaintiff or otherwise require

25  Plaintiff to replace the fluids in his body with other liquids prior to allowing Plaintiff to leave

26  OCTAPHARMA's premises.

27  6.      Shortly after leaving OCTAPHARMA's premises, Plaintiff suffered a debilitating

28  stroke caused by OCTAPHARMA's failure to replace the fluids in Plaintiff's body by failing to

1    administer an IV saline solution to Plaintiff or requiring Plaintiff to remain on OCTAPHARMA's

2    premises until Plaintiff had orally consumed a sufficient amount of liquids to replace the loss of fluids

3    caused by the withdrawal of plasma from his body.

4         7.    Plaintiff was informed by OCTAPHARMA's employees and/or agents that due to a

5    shortage of saline solution, OCTAPHARMA could not administer the IV saline solution to Plaintiff

6    to replace his fluids after the plasma withdrawal because there was a shortage of saline solution and,

7    due to the shortage, it had no saline solution in its possession or control. Upon information and belief,

8    at the time OCTAPHARMA made that statement to Plaintiff, OCTAPHARMA knew or should have

9    known the statement was false because OCTAPHARMA had a large supply of saline solution housed

10    in its local warehouse that was available to supply OCTAPHARMA's plasma donation center.

11         8.    As a direct and proximate cause of OCTAPHARMA's negligence, as alleged herein,

12    shortly after being allowed to leave OCTAPHARMA's premises without any fluid replacement,

13    Plaintiff suffered a debilitating stroke resulting in severe and permanent mental and physical injuries

14    and causing Plaintiff to incur medical bills and costs in an amount in excess of $10,000.00.

15         9.    As a further direct and proximate cause of OCTAPHARMA'S negligence, Plaintiff

16    suffered general damages for disability, impairment, physical pain and suffering, mental and emotional

17    pain and suffering and loss of enjoyment of life all to his general damages in an amount in excess of

18    $10,000.00.

19         10.    By knowingly making false and fraudulent statements to Plaintiff that it had no saline

20    solution, when in fact it did, and by failing to replace Plaintiff's body fluids with an IV saline solution,

21    OCTAPHARMA intentionally and wantonly acted with a reckless disregard for the health and safety

22    of Plaintiff's well being thereby causing Plaintiff to suffer a debilitating stroke. Upon information and

23    belief, OCTAPHARMA made the same or similar false and fraudulent statements to other donors.

24    OCTAPHARMA's actions, and inactions, constitute oppressive, fraudulent and malicious conduct

25    thereby entitling Plaintiff to an award of punitive damages in a amount sufficient to punish

26    OCTAPHARMA and to hold OCTAPHARMA out as an example to deter other similarly situated

27    businesses from engaging in any similar malicious, fraudulent and oppressive conduct.

28    . . .

11.    At all times alleged herein, the employees and agents of OCTAPHARMA were acting within the course and scope of their employment and/or agency at OCTAPHARMA and OCTAPHARMA is therefore vicariously liable for all damages caused by their negligent, reckless, malicious and oppressive actions and/or inactions under the doctrine of *respondeat superior*.

12.    The intentional, willful, malicious and reckless acts and conduct of OCTAPHARMA, as set forth and described herein, were engaged in and committed by employees and/or agents of OCTAPHARMA who were unfit for the purpose of their employment or agency and were known, or should have been known, by OCTAPHARMA, to be unfit for the purposes of their employment or agency; OCTAPHARMA employed, trained and managed its employees or agents with a conscious disregard of the rights or safety of others, including Plaintiff; such intentional acts and conduct of the employees or agents was approved and ratified by such officers, directors and managing agents of OCTAPHARMA; the actions of OCTAPHARMA, its agents and employees, as against Plaintiff, were committed with oppression, fraud and malice, both express and implied; Plaintiff is therefore entitled to an award of punitive damages against Defendant OCTAPHARMA in an amount in excess of $10,000.00.

### III.

### SECOND CAUSE OF ACTION
### (Professional Negligence as Defined by NRS 41A.015 – Plead in the Alternative to Plaintiff's First Cause of Action)

13.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates same as if fully set forth herein.

14.    On or about August 15, 2015 Plaintiff gave plasma to OCTAPHARMA in exchange for compensation. After the plasma was removed from Plaintiff's system, OCTAPHARMA negligently failed to administer any saline solution to Plaintiff or otherwise require Plaintiff to replace the fluids in his body with other liquids prior to allowing Plaintiff to leave OCTAPHARMA's premises.

15.    As a direct and proximate cause of OCTAPHARMA's failure to replace Plaintiff's body fluids after the plasma donation, Plaintiff suffered a debilitating stroke causing permanent physical and mental injuries and impairments to Plaintiff.

16.     OCTAPHARMA's negligence and professional negligence included, but was not limited to, failing to administer an IV saline solution to Plaintiff after the plasma donation, failing to require Plaintiff to drink sufficient liquids to replace the loss of fluids in his body after the plasma donation and/or failing to monitor Plaintiff for a sufficient time after the plasma donation to confirm his body fluids had been replaced and were at healthy levels. OCTAPHARMA's actions, and inactions, fell below the applicable standard of care and are therefore actionable under NRS Chapter 41A.

17.     At all times alleged herein, Defendant OCTAPHARMA was vicariously liable under the legal doctrine of *respondeat superior* for the negligent actions or inactions of its employees and/or agents, including, but limited to, the negligent actions of all of its employees and/or agents, herein named as DOES I through V and ROE ENTITIES I through V herein.

18.     The Affidavit of J. Marshall Anthony, DO, JD, MBA is attached hereto as **Exhibit 1** and incorporated fully herein by reference.  Said Affidavit complies with NRS 41A.071 and supports the allegations of professional negligence as contained herein.

19.     As a direct and proximate cause of the negligence and professional negligence of Defendants, and each of them, as alleged herein, Plaintiff was caused to suffer injury to his mind and body caused by a debilitating stroke and required to seek and undergo medical treatment and incur medical expenses, and in the future will be required to seek and undergo medical treatment and incur additional medical expenses in an amount, both past and future, in excess of $10,000.00.

20.     That as a direct and proximate cause of the negligence and professional negligence of Defendants, and each of them, as alleged herein, Plaintiff was caused to suffer injury to his mind and body caused by a debilitating stroke and such injuries caused and continue to cause Plaintiff significant pain, suffering, discomfort, disability and impairment, as well as loss of enjoyment of life, and such injuries, pain, suffering, discomfort, impairment and loss of enjoyment of life are permanent, in whole or in part, and will continue into the future, all to said Plaintiff's past and future general damages in an amount in excess of $10,000.00.

. . .

. . .

**WHEREFORE,** Plaintiff BERNARD CHABOUDY, expressly reserving the right to amend this Complaint at the time of trial of the action herein to include all items of damages not yet ascertained, demands judgment against Defendants, and each of them, as follows.

1. For general and compensatory damages against Defendants, jointly and severally, including but not limited to, damages for past and future physical pain and suffering, past and future mental pain and suffering, past and future disability, past and future loss of enjoyment of life, hedonic damages, in accordance with proof at trial, all of which are in excess of Ten Thousand Dollars ($10,000.00);

2. For special damages, including past and future medical expenses, against Defendants, jointly and severally, in accordance with proof at trial, all of which are in excess of Ten Thousand Dollars ($10,000.00);

3. For an award of punitive damages in excess of Ten Thousand Dollars ($10,000.00);

4. For an award of reasonable attorney's fees;

5. For the costs of suit incurred herein;

6. For prejudgment and post-judgment interest at the maximum amount allowed by law; and,

7. For such other and further relief as the Court deems just and proper.

DATED this _12_ day of August, 2016.

LAW OFFICES OF STEVEN M. BURRIS

By: _____
Steven M. Burris, Esq.
Nevada Bar No. 000603
sb@steveburrislaw.com
2810 W. Charleston Blvd., Suite F-58
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

# EXHIBIT 1

EXHIBIT 1

AFFIDAVIT OF EXPERT

STATE OF NEVADA    )
                         )ss:
COUNTY OF CLARK    )

      J. MARSHALL ANTHONY, DO, JD, MBA, being first duly sworn, deposes and says:

1. My CV is attached and incorporated herein as Exhibit 1. In addition to what is stated on the CV, I am the medical director of Biomat Plasma Center, which is the same sort of business as Octapharma. Currently, my primary employment is as supervisor in charge of family medicine residents at Family Medicine Specialists. I have been certified to testify in the 8th Judicial District Court several times, in the area of medical-legal matters.

2. My opinions below are rendered to a degree of reasonable medical probability.

3. I have been provided, and have reviewed, the following medical or other records:
   1. The donor's file when he was a patient at the VA
   2. Witness statements from two prior employees of the Octapharma facility

      I was informed by plaintiff's counsel that Octapharma refused to provide records on the basis that they were private; and that since Octapharma was not technically a medical facility, they did not have to provide records or follow HIPAA.

      An electronic disk containing these records is attached to my affidavit as Exhibit 2, and the information and data contained thereon is incorporated herein.

4. I have reviewed the Memorandum of history of relevant events as recalled by Mr. Chaboudy, attached hereto as Exhibit 2, and the information and data therein is incorporated herein.

5. My opinions are based on currently available data, and are subject to supplementation, as other subsequently supplied data may become known by me.

6. It is my opinion that treatment below the reasonable standard of care was given to Mr. Chaboudy, by Octapharma and its employees, and as a result, Mr. Chaboudy was caused to suffer significant harms and losses as result thereof. My opinions can be summarized at this time as follows:
      When a donor gives plasma, a great deal of fluid is taken from the blood. It is extremely important to have a substantial portion of the fluids replaced before the donor is released. Typically, the fluid replacement is done via saline solution that is given to the donor intravenously (IV). However, there was a time last year when there was a reported shortage of the saline solution. For those facilities who ran out of saline or had a limited supply of saline solution, it was permissible to have the donors either receive IV saline if you were a woman under a specific weight but all other donors were required to drink a 20 ounce bottle of

PowerAde or similar product before leaving to help replace the fluid that was removed at the donation, minutes earlier. At my facility, once the company knew of the saline shortage, the company made a policy that all male donors must drink a 20 ounce bottle of PowerAde or something similar, in front of a staff member before they can be released from the facility. Likewise, all women had to drink a bottle of PowerAde prior to leaving the facility, except those women that were under a specific weight had to receive 500 cc of saline by IV. This ensures adequate rehydration promptly for all donors. In contrast, just telling a donor to "get a drink at the water fountain before you head out" is clearly inadequate and below any reasonable standard of care. Also, from the statements of the former employees, it appears that at the time the saline was not given due to the 'shortage,' Octapharma was actually hoarding a supply of saline in its warehouse, and intentionally decided not to use it under the ruse that they had run out. This business decision put donors like Mr. Chaboudy under extreme risk.

When the plasma/fluid is taken out, and not properly replaced, this will cause the donor's blood to be a greater percentage of red blood cells v. plasma/fluid; in effect, the blood is 'thickened.' This in turn greatly increases the risk of a stroke, particularly in an individual like Mr. Chaboudy, whose age and other factors made him more vulnerable. Given that the stroke occurred shortly after the August 15, 2015 incident, it is apparent that the failure to replace fluids by the Octapharma group was the substantial factor in triggering the stroke to take place.

7.  In my role as medical director of Biomat, I have been informed that blood plasma facilities are regarded by Nevada as not being "health care providers." So, it does seem to me that Octapharma's contention that they are not subject to laws that apply to medical malpractice cases may be true. This, I suppose, is something for judges to determine. But, even if they are not subject to medical malpractice statutes, they still must follow the basic protocols of protecting the safety of those who donate plasma, and there is nothing more basic than making sure that fluids are sufficiently replaced after a plasma donation.

_____
J. MARSHALL ANTHONY, DO, JD, MBA

SUBSCRIBED AND SWORN to before me

this __11__ day of August, 2016.

_____
NOTARY PUBLIC in and for said
County and State.

CARLA DUKOWITZ
Notary Public State of Nevada
No. 92-3230-1
My Appt. Exp. Sept. 17, 2016

# EXHIBIT 1

# EXHIBIT 1

# Dr. James M. Anthony
doctorjamesanthony@gmail.com

## FORMAL EDUCATION
- SEP 77 – JUN 81 BS - Ohio University, Athens, OH
- SEP 81 – JUN 85 DO - Ohio University, COM, Athens, OH
- AUG 92 – DEC 94 JD - Florida State University, College of Law, Tallahassee, FL
- JAN 10 – DEC 10 MBA - University of Tennessee, Knoxville, TN

## THREE YEAR POST GRADUATE TRAINING
- JUL 85 - JUN 86 Riverside Osteopathic Hospital, Trenton, MI – rotating internship
- JUL 86 - JUN 88 Cleveland Metropolitan General Hospital with Department of Family Medicine at Case Western Reserve University, Cleveland, Ohio family medicine residency

## LICENSING
- Nevada #765 expires December 31, 2016, annually renewed & initially issued January 13, 1996
- DEA - BA4763618 expires June 30, 2019; Issued May 8, 2016
- Nevada Board of Pharmacy – CS08027 expires October 31, 2016
- No sanctions against any license presently or in the past
- Licenses previously held but not active at this time – all were not renewed by my choice
  - Michigan 7/1/85 to 6/30/86 - Limited educational license 5101009384
  - Ohio 7/1/86 to 7/1/01 - 34:004075
  - Florida 12/21/87 to 1/31/00 - OS 5381
  - Colorado 9/13/91 to 5/31/01 - 31173
  - Georgia 10/7/93 to 12/31/03 - 037466

## APPOINTMENTS & MEMBERSHIP
- Board member and Secretary of the Nevada State Board of Osteopathic Medicine, sworn in January 2008 to October 2015; appointed by the Governor 2007 & reappointed in 2011
- Appointed PPD panel review for Department of Industrial Relations, State of Nevada, from July 2009 to August 2010
- Fellow of the American Academy of Family Physicians
- Diplomate of the National Board of Examiners for Osteopathic physicians and surgeons
- Diplomate of the American Board of Family Medicine – Board Certified
  - Initial certification July 8, 1988 to July 13, 1995
  - Recertified July 14, 1995 to July 12, 2001
  - Recertified July 13, 2001 to July 25, 2008
  - Recertified July 26, 2008 and expires December 31, 2018
- Diplomate of the American Board of Independent Medical Examiners - Board Certified
  - Initial certification 2006
  - Recertified June 10, 2012 and expires June 10, 2017
- Certified Nevada Impairment Rater for the Department of Industrial Regulations, Workers' Compensation 2006 & performing PPDs since 2007
- Member of the Florida Bar – licensed and currently on inactive status

## MILITARY
- MAY 82 - AUG 94 United States Army Reserve Medical Service Corp & Medical Corp; honorably discharged as a Captain

## EXPERIENCE
I worked in outpatient and inpatient settings with acute care and chronic care patients and in extended care facilities, skilled nursing facilities, hospitals, jails, plasma centers, primary care clinics, urgent cares and emergency rooms.

I worked as an expert witness for standard of care evaluations and determinations related to physicians in Florida and Nevada for the Florida Department of Business and Professional Regulation and the Nevada State Board of Osteopathic Medicine.

In addition, I work in utilization review for a national company doing reviews in Nevada, California, Utah and Idaho.

## CURRENT WORK ACTIVITY
- JUL 05 – Present, J. Marshall Anthony, D.O., J.D., LTD. – which includes
  - Family Medicine Specialist of Las Vegas – residency clinic instructor (May 2016 to present)
  - Private practice which includes family medicine, medical record review, injury medicine, impairment ratings and independent medical examinations (July 2005 to present)
  - Walgreens Pharmacy – consultant Take Care Clinic (November 2013 to present)
  - Laboratory Director at Biomat USA (April 2015 to present)
  - Prium Utilization Reviewer (June 2015 to present)
  - Naphcare staff physician (August 2015 to present)

## SAMPLES OF PAST WORK ACTIVITY INCLUDES (Note that many positions were held concurrently for scheduling flexibility while working and/or attending school and not all work is listed.)
### WORK WHILE IN LAS VEGAS
- DEC 13 to MAY 15, Independent contractor and employee with Urgent Care Extra, Las Vegas, Nevada
- NOV 11 to Nov 13, Independent contractor with Community Family Doctors, Las Vegas, Nevada
- APR 11 to SEP 11, Employee of Osteoarthritis Center of America, Las Vegas, Nevada – facility closed in 2011 and bankrupt
- APR 08 to APR 11, Independent contractor with American Hospital Service Group at the Air Force Family Medicine Clinic in the Michael O'Callaghan Federal Hospital, Las Vegas
- DEC 07 to APR 11, J. Marshall Anthony, D.O., J.D., LTD.; Contracted with Minute Clinic Nevada, Medical Director, Las Vegas, Nevada
- APR 07 to DEC 08, Employee with Concentra Medical Center, staff physician in an injury clinic for worker's compensation patients, Las Vegas, Nevada
- SEP 96 – JUL 05 Employee with University Medical Center, Las Vegas, NV – staff physician, senior staff physician and medical director at urgent care and primary care clinics
- NOV 96 – MAY 97 J. Marshall Anthony, D.O., PA.  Contracted with Faster Care at Summerlin, urgent care physician, Las Vegas, Nevada
- MAR 96 – AUG 96 J. Marshall Anthony, D.O., PA.  Contracted with Faster Care at the Lakes, urgent care physician, Las Vegas, Nevada
### WORK WHILE IN THE TALLAHASSEE AREA
- MAR 95 – MAR 96 Employee with Tallahassee Memorial Blountstown Family Practice, staff physician
- JAN 94 – JAN 96 J. Marshall Anthony, D.O., PA.  Contracted with Donalsonville Hospital emergency room physician, Donalsonville, Georgia

- 94 - 96 J. Marshall Anthony, D.O., PA. Contracted with the Department of Florida Prisons, as Chief Medical Review Officer for mortalities for Tallahassee, Florida
- MAY 93 – AUG 96 J. Marshall Anthony, D.O., PA. Contracted with Lakeshore Hospital emergency room physician, Lake City, Florida
- SEP 92 – JAN 96 J. Marshall Anthony, D.O., PA. Contracted with Bartow Hospital emergency room physician, Bartow, Florida

**WORK WHILE IN THE TAMPA AREA**

- DEC 91 – NOV 93 J. Marshall Anthony, D.O., PA. Contracted with Spring Hill Hospital, emergency room physician, Spring Hill, Florida
- SEP 90 – MAY 94 J. Marshall Anthony, D.O., PA. Contracted with Lakeland Regional Medical Center, urgent care physician, Lakeland, Florida
- JUL 90 – AUG 92 J. Marshall Anthony, D.O., PA. Contracted with Polk General Hospital, emergency room physician, Bartow, Florida
- MAY 89 – JUL 89 Locum tenens contract with, Apopka Family Practice Health Clinic – Farm Workers Clinic, Apopka, FL, family physician
- JUL 88 – APR 89 Employee of Family Doctors, Ruskin FL, family physician in a group practice
- AUG 89 – JUL 92 J. Marshall Anthony, D.O., PA., Riverview, FL, solo family practice
- AUG 89 – JUL 92 Brandon Hospital, admitting privileges, Brandon, Florida
- MAY 89 – JUL 89 Florida Hospital Apopka, admitting privileges, Apopka, Florida
- JUL 88 – JUL 92 South Bay Hospital, admitting privileges, Sun City, Florida

**WORK WHILE MOONLIGHTING IN RESIDENCY**

- JUN 87 – JUN 88 Independent Contractor Blue Cross/Blue Shield HMO Clinic, urgent care physician, Cleveland Ohio
- JAN 87 – JUN 88 Independent Contractor Med Center Urgent Care, urgent care physician, North Olmsted, Ohio
- JUL 86 – MAR 87 Independent Contractor Med Access Urgent Care, urgent care physician, Parma, Ohio

**PRIOR HOSPITAL STAFF/AFFILIATIONS/PRACTICE**

- Riverside Osteopathic Hospital
- Cleveland Metropolitan General Hospital
- Sun City Hospital
- Brandon Hospital
- Polk General Hospital
- Bartow Memorial Hospital
- Lakeland Regional Hospital Medical Center
- Spring Hill Hospital
- Brooksville Hospital
- Sebring Hospital
- Lake City Hospital
- Madison Memorial Hospital
- Donalsonville Hospital
- Tallahassee Memorial Hospital
- Calhoun Memorial Hospital
- Destin Hospital
- University Medical Center
- Desert Springs Hospital via Pahrump Family Medical Clinic
- Valley Hospital
- Summerlin Hospital via Faster Care at Summerlin Hospital
- Michael O'Callaghan Federal Hospital

## TEACHING EXPERIENCE

- MAY 16 – PRESENT Family Medicine Specialists of Las Vegas, Las Vegas, Nevada, Residents
- APR 08 – APR 11 Family Medicine Residency Clinic, Medical Provider, Michael O'Callaghan Federal Hospital, Las Vegas, Nevada, medical students & Physician Assistants
- JAN 07 – 2008 College of Southern Nevada, instructor anatomy and physiology, pre-paramedical professionals and paramedical professionals
- JAN 91 - JUN 92 University of South Florida, Tampa, FL, nurse practitioner students
- JUN 87 – JUL 88 Cleveland Metropolitan Hospital with Case Western Reserve University, Cleveland, OH, family medicine residency
- Numerous speaking engagements at medical conferences, legal conferences, television shows, radio shows and the newspaper regarding important issues for approximately 25 years. Topics for lectures included excessive narcotic use, state medical board concerns, exercise for the elderly, lipid disorders, the impaired physician, anatomy for lawyers, the legal ramifications of pain medications, a doctor's review of the legal system for other doctors, a doctor's recommended deposition preparation, medical ethics, treatment for patients exposed to weapons of mass destruction and a doctor's recommendation on litigation psychology.
- Teacher of Weapons of Mass Destruction, WMD, for Nevada physicians
- Teacher of medical students from Touro University Nevada

## OTHER

- MAY 91 - JUL 92 American Institute of Medical Law, Health Care Risk Manager, certified risk manager, Tampa, FL
- JUN 94 - AUG 94 FSU law program with Oxford University, St. Edmund Hall, Oxford, England,

# EXHIBIT 2

# EXHIBIT 2

MEMORANDUM

RE:        BERNARD CHABOUDY, Memo to expert regarding recollection of events by patient

Mr. Chaboudy is in his later 50's. He has since 1978 gone regularly to plasma donor banks for a little extra cash. He is a veteran, with honorable discharge, and is married, and they live in an apartment. He survives off some sort of pension fund.

Mr. Chaboudy states that up until the below incident, the plasma centers, including Octapharma, would always put back of bag of saline solution before releasing him.

He was, at the time of this incident , going to the plasma bank twice a week. They pay you $55 a week ($20 for the first visit and $35 for the second). Every now and then when I guess the market is up for plasma, they give bonuses. It was during a bonus time that this incident happened. The bonus was $20 per donation.

He goes to the Octapharma Blood Plasma facility because it is near where he lives. He says the place is very busy. Often times the line goes out the door. When you go in there you check in and you get a number, and you sit and wait until they call your number, kind of like the DMV. Normally, there is a wait. The faster they process people, the more they can run through there in a day.

He cannot say exactly when but thinks it was around late July when he went in to give a donation and the phlebotomist did not give him the saline and said you are good to go. He questioned the phlebotomist, a black female adult, about why she was not giving him the saline. She indicated in so many words that it had been determined by her bosses that the saline was no longer medically necessary. She also stated something to the effect of "and the bosses are so cheap". Anyway, he felt like they must know what they are doing, She said drink some water, but did not say how much. He stopped by the water fountain and had a few sips, and left.  He went back a couple or so more times before the August 15 service, and they continued to give neither saline, nor, bottles of Gatorade or similar.

They do keep some kind of medical history on the computer about the donors. Every time they go in there, they do prick his finger and take a drop of blood and test it. He does not know what they are testing for with finger test. He has seen them making entries on the computer every time he goes in there.

On the day of this incident, 8/15/15, he went in. It was still bonus time, and the place was packed with donors waiting for their numbers to be called. . They gave you a special bonus if you went in four times during the two week period. This would have been his fourth visit in the last two weeks.

He had to wait quite some time for his turn.

After he was released, he went to a nearby Albertsons to use their ATM machine, which cashed the payment card from Octapharma.

He then walked from there to his apartment. He remembers feeling kind of "weird" and light headed. . He was walking eventually through a dirt lot next door to the Palms Resort which is a short cut to where he lives. He felt weak and light-headed and stumbled, almost falling. His right leg was kind of dragging. His wife wanted to call an ambulance. He reminded her that at that time, the ambulance companies would not take patients directly to the VA, but would take you to a regular hospital (where his VA coverage would not work.) She also looked on the internet for symptoms of a stroke, and he did not have all the various symptoms listed, so he concluded it was probably just another "TIA."

Fortunately, he has a friend named "Chuck" who will give him rides to the VA. So, Chuck was contacted, and he came by as soon as he could and took the client to the VA.

They had him in ICU for three days and diagnosed a stroke on the left side of his head. The doctor (he does not remember the name) told him that the reason for the stroke was his blood was way too thick. The client related that the stroke began soon after the plasma donation. He also told the doctor that the Octapharma said that the saline was not medically necessary anymore. The doctor said it makes sense that probably was what caused his blood to be so thick and caused him to have a stroke.

He was then transferred to the rehab section of the hospital called CLC which stands for Clean Living Center for three weeks. He got occupational therapy while he was there.

He is now going to the V.A. 2-3 times a week for physical therapy and occupational therapy. He has a lot of problems remaining. He says he has lost about half the function in his right leg. He has only about 20% of the use in his right arm and right hand. His wife has to cut his food. She helps him get dressed. He used to be able to type on the computer about 50 wpm. Now he hunts and pecks with his other hand. He cannot write with his hand anymore. He feels his equalibrium is off, especially at night. They used to walk at night for exercise. They cannot do that now. He uses a walker now.

His says he talked better before than he talks now. She says he goes off topic a lot and forgets things that he just  He said that the doctors did not find a particular bleed in his head , but it was definitely was the right side of his head.

1  IAFD
   **STEVEN M. BURRIS, ESQ.**
2  Nevada Bar No. 000603
   sb@steveburrislaw.com
3  **LAW OFFICES OF STEVEN M. BURRIS**
   2810 W. Charleston Boulevard, Suite F-58
4  Las Vegas, Nevada 89102
   (702) 258-6238 - Telephone
5  (702) 258-8280 - Facsimile

6  *Attorneys for Plaintiff*

7                          **DISTRICT COURT**

8                     **CLARK COUNTY, NEVADA**

9    BERNARD CHABOUDY, an individual,        CASE NO.:
                                             DEPT. NO.:
10          Plaintiff,

11   vs.

12   OCTAPHARMA PLASMA, INC., a Foreign
     Corporation; DOES I through X, inclusive,
13   and ROE ENTITIES I through X, inclusive,

14          Defendants.

15

16          <u>**INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)**</u>

17          Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for

18   parties appearing in the above entitled action as indicated below:

19          Plaintiff BERNARD CHABOUDY                    $270.00

20                          **TOTAL REMITTED:**           **$270.00**

21   DATED this _12_ day of August, 2016.

22                                  LAW OFFICES OF STEVEN M. BURRIS

23
                                    By: _____
24                                       Steven M. Burris, Esq.
                                         Nevada Bar No. 000603
25                                       sb@steveburrislaw.com
                                         2810 W. Charleston Boulevard, Suite F-58
26                                       Las Vegas, Nevada 89102
                                         *Attorneys for Plaintiff*
27

28

                               Page 1 of 1

*Law Offices Of*
**STEVEN M. BURRIS**
*A Limited Liability Corporation*
2810 W. Charleston Boulevard
Suite F-58
Las Vegas, Nevada 89102



Bernard Chaboudy
v. Octapharma Plasma, Inc.
EXHIBIT 2 to
Affidavit of J. Marshall Anthony, D.O.